**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JEREMY R. EDINGTON,**

     **Petitioner,**                   **Civ. No. 2:14-cv-2718**
                                     **Crim. No. 2:10-cr-00335**
     **v.**                         **Chief Judge Sargus**
                                     **Magistrate Judge King**

**UNITED STATES OF AMERICA,**

     **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate* (ECF No. 132), Respondent's *Response in Opposition* (ECF No. 141), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### Facts and Procedural History

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> In July 2010, Jeremy Edington went to a Franklin County, Ohio restaurant to meet a person whom he believed to be a fourteen-year-old boy he had encountered on the internet. The "boy" was actually an undercover officer who stopped Edington near the restaurant. During an interview following the stop, Edington admitted that he solicited sex from the boy and that he possessed child pornography. He was arrested and later indicted by a grand jury. In July 2011, a jury convicted Edington of one count of coercion and enticement in violation of 18 U.S.C. § 2422(b), three counts of receipt of visual depictions in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of visual depictions in violation of 18 U.S.C. § 2252(a)(4)(B). He now appeals his convictions. For the reasons that follow, we affirm.
>
> On June 14, 2010, Corporal Dan Johnson, a member of the Franklin County Internet Crimes against Children Task Force,

found an ad titled "Young Boys?" while searching the personals section of Craigslist. The ad stated that the person who posted the ad, later identified as Edington, was "looking for some [boys] near my age and below to play/fool around." Johnson responded to the ad using the undercover persona "Jake Bloom," a fourteen-year-old boy. Edington, using the screen name "Leonard Vogel," sent "Jake" an email inviting him to chat. Edington contacted "Jake" the next day via instant message and engaged him in a sexually explicit conversation.

On July 26, 2010, Edington contacted "Jake" again via instant message. Edington asked "Jake" if he would meet him for the purpose of engaging in sexual activity. They arranged to meet later that day at a Steak 'n Shake near "Jake's" fictitious home. Edington told "Jake" that he would be driving a black car and would park behind the restaurant.

Police set up surveillance in the area near the Steak 'n Shake. At the scheduled time, Edington arrived in a black Chevy Malibu and parked behind the restaurant, where he sat for several minutes. Edington then drove in a loop around the restaurant, exited the parking lot, and went to a gas station across the street, where an officer in a marked police cruiser stopped Edington at Johnson's request.

Johnson approached Edington, identified himself as a police officer, and asked what Edington was doing in the area. Edington admitted that he was there to see a boy whom he had met online, but he said that he wanted to warn the boy that what he was doing was dangerous. Johnson advised Edington of his Miranda rights, and Edington signed a waiver form. Edington then consented to a search of his car. Johnson found a Blackberry cell phone during the search, which Edington gave him permission to examine. The first thing that Johnson saw was an instant message that Edington had sent to "Jake" a few minutes earlier asking him where he was.

Johnson asked Edington if he had ever viewed child pornography, and Edington admitted that he had some on his home computers. Edington gave Johnson consent to search his residence. The officers drove Edington to his home, where Edington signed a consent-to-search form. Officers searched the home and seized a laptop and a desktop computer. Then they transported Edington to the Franklin County Sheriff's Office detective bureau, where Johnson interviewed Edington.

2

During the interview, which was recorded, Edington admitted that he posted the ad on Craigslist, that he used the screen name "Leonard Vogel," that he initiated the conversations with "Jake," and that he propositioned him for sex. Edington said that he had been downloading and viewing child pornography since he was sixteen years old and that he had about forty such videos on his computers. Edington explained how he searched for and downloaded pornography involving young boys using the file-sharing program LimeWire.

Edington was arrested on August 3, 2010. On June 30, 2011, a grand jury issued a superseding indictment charging Edington with one count of coercion and enticement (Count One), three counts of receipt of visual depictions (Counts Two, Three, and Four), and one count of possession of visual depictions (Count Five). On July 26, 2011, Edington went to trial. The jury found Edington guilty on all counts. Edington was sentenced to 120 months' imprisonment on Count One, sixty months' imprisonment on Counts Two, Three, and Four (to run concurrently with the sentence imposed on Count One), and thirty-six months' imprisonment on Count Five (to run consecutive to the sentences imposed on Counts One, Two, Three, and Four). He also was sentenced to supervised release of fifteen years and ordered to pay a $500 special assessment. Edington timely appealed.

*United States v. Edington*, 526 Fed.Appx. 584, 585-87 (6th Cir. 2013).   On direct appeal, Petitioner challenged the sufficiency of the *Superseding Indictment* and of the evidence as they related to Count 1; challenged the jury instructions; argued that the pornographic videos admitted into evidence had not been properly authenticated; and challenged the constitutionality of the statutes under which he was convicted "because Congress lacks the power to regulate the internet as a means or facility of interstate commerce under the Commerce Clause" and because "Section 2252(a)(2), which prohibits the knowing receipt of 'any visual depiction' of minors engaged in sexually explicit conduct, is ambiguous as to the appropriate unit of prosecution."  *Id*. at 593.  On May 16, 2013, the Sixth Circuit affirmed the judgment of this Court.  *Id*.  On January 13, 2014, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari.  Edington v. United States*, 134 S.Ct. 955 (2014).

In his *Motion to Vacate*, Petitioner alleges that he was denied the effective assistance of counsel because his trial attorney "waited until trial had started to research basic issues, such as jurisdiction and the age of consent," "was unaware of case law about enticement," and "based the entire defense on an incorrect view of the law." Petitioner complains that "most of the appeal was dismissed as procedurally barred" and alleges that his attorney abandoned him during the appeal (claim one). *Motion to Vacate* (ECF No. 132, PageID# 1535.) Petitioner also alleges that this Court lacked jurisdiction (claim two), and contends that he is actually innocent and that the evidence was insufficient to sustain his conviction (claim three); that "§ 2252 cannot be constitutionally applied" (claim four); and that he was denied a fair trial because of prosecutorial misconduct (claim five). Respondent contends that Petitioner's claims are procedurally defaulted and without merit.

### Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence is imposed in violation of the Constitution or laws of the United States, when the trial court lacked jurisdiction, or where the sentence exceeded the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States,* 417 U.S. 333, 346 (1974)(quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional

claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process.  Mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." *Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2013)(quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained in a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crimes for which he stands convicted. *Ray,* 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

## Ineffective Assistance of Counsel and Lack of Jurisdiction

Petitioner alleges that he was denied the effective assistance of trial and appellate counsel (claim one) and that the Court lacked jurisdiction over the prosecution (claim two). Because these claims are related, the Court will consider them together.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner.  *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id.*

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. A petitioner, therefore, must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 692.

In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* to demonstrate ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The *Strickland* test also applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

A. Were the omitted issues "significant and obvious?"
B. Was there arguably contrary authority on the omitted issues?
C. Were the omitted issues clearly stronger than those presented?
D. Were the omitted issues objected to at trial?
E. Were the trial court's rulings subject to deference on appeal?
F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
G. What was appellate counsel's level of experience and expertise?
H. Did the petitioner and appellate counsel meet and go over possible issues?
I. Is there evidence that counsel reviewed all the facts?
J. Were the omitted issues dealt with in other assignments of error?
K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999).  This list is not exhaustive and need not produce a certain "score*." Id*. at 428.

Petitioner claims that his trial attorney performed in a constitutionally ineffective manner because the defense presented, *i.e.,* that no real minors had been involved in the offenses charged, was legally unsound, and because his counsel failed to challenge the constitutionality of 18 U.S.C. § 2422 until the close of prosecution's case.  Petitioner argues that the record thus establishes that his trial counsel failed to conduct adequate research on the law prior to the start of trial.

Petitioner's arguments are not persuasive.  The record reflects substantial evidence of guilt.  Petitioner does not refer to, and this Court is unable to locate in the record, any actions or legal arguments that defense counsel should have raised, but did not, and which worked to Petitioner's prejudice, as that term is defined in *Strickland*.  At the close of the government's case, defense counsel argued, *inter alia*, against the constitutionality of 18 U.S.C. § 2422(b). *Transcript,* Vol. II (ECF No. 126, PageID# 1312.)  Defense counsel explained that he did not

raise the issue earlier because this argument had evolved from his research on the jurisdictional

issue and in light of testimony indicating that the age of consent in Ohio is 16 years of age.  *Id.*[1]

> [DEFENSE COUNSEL]:  What I'm talking about is Corporal
> Johnson's testimony, and frankly the government's argument, that
> the age of consent in Ohio is 16 years old for sexual activity yet –
> which is Constitutionally protected conduct, as we all know, under
> the privacy of the Constitution.  However, this statute criminalizes
> the First Amendment communication between any adult and a 16,
> 17, or 18 year old – well, a 16 or 17 year old, soliciting them. . . . I
> can't let this pass by, that the statute on its face is un-
> Constitutional because it proscribes First Amendment conduct
> which would be specifically an adult soliciting a 17 year old for
> sexual activity.  They're asking the person to engage in activity
> that is Constitutionally protected.

*Id.* (PageID# 286-87.)  The Court rejected this challenge to the statute.  *Id.* (PageID# 1314.)   In

view of the record, the fact that defense counsel did not raise this issue prior to or earlier in the

trial does not demonstrate either that counsel was unprepared for trial or that he failed to conduct

adequate legal research.  Moreover, the Court did not refuse to entertain counsel's argument.

Finally,  Petitioner suffered no prejudice as a result of his counsel's performance in this regard.

Petitioner also alleges that he was denied the effective assistance of appellate counsel

because his attorney raised issues that were procedurally barred from review, failed to properly

argue his claim regarding improper jury instructions, and "argued against pornography counts of

procedural, but not substantive, grounds."  *Motion to Vacate* (ECF No. 132, PageID# 1549.)

Petitioner complains that appellate counsel's final brief was only three pages in length, addressed

only one argument, and appears to have been "thrown together with little effort."  *Id.* (PageID#

1550.)   Petitioner also alleges that he could not contact appellate counsel.

---

[1] The facts in this case involved a person purported to be 14 years of age.

In support, Petitioner has attached a letter from the United States Court of Appeals for the Sixth Circuit, dated June 19, 2013, indicating that the Sixth Circuit had granted his motion for an extension of time to file a petition for rehearing *en banc*, but noting that Petitioner remained represented by counsel.  *Id.* (ECF No. 132, PageID# 1573.)  Petitioner has also attached a letter from his attorney dated August 15, 2013, which reads in pertinent part as follows:

> I am in receipt of your letter dated July 31, 2013.  A couple of things about our status as lawyer and client:  1 [sic] – our current agreement was for me to prosecute your appeal, which I have done.  After the court's decision, you decided on your own to seek an en banc hearing of your case.  I presumed at that point you, and your family, were no longer willing or able to pay for further services from me.  I feel that the court of appeals got your case wrong, but the only remedy now is to seek review by the U.S. Supreme Court.  You have 90 days from the date of your appellate decision to seek review by the U.S. Supreme Court.
>
> If you are interested in retaining me to prepare that petition and file it, please advise me.  I will copy your entire file onto CD and send it to your mother as you requested.
>
> Please advise as to what you want to do going forward.

*Id.* (PageID# 1574.)

The record therefore does not support Petitioner's claim that he was abandoned by his appellate counsel during Petitioner's direct appeal.

Petitioner also argues that his appellate counsel was ineffective when he failed to properly present and argue a claim based on an allegedly improper jury instruction. On direct appeal, the Sixth Circuit considered but denied the challenge to the jury instruction:

> Edington objected at trial to the instruction regarding his knowledge that the videos he was charged with receiving were pornographic images of children. When Edington objected, the district court struck the phrase "knew or believed" from the instructions and replaced it with "had knowledge," clarifying that Edington had to know that he was receiving child pornography in

order to be convicted of Counts Two, Three, and Four. On appeal, Edington's argument, in its entirety, is:

> The court's instruction to the jury was improper. On the issue of Mr. Edington's knowledge the instructions failed to clearly instruct the jury that to convict it must find, beyond a reasonable doubt, not only that the seven videos were authentic, but that Mr. Edington knew, not guessed, not hoped, not desired, them to be authentic. It is insufficient under the charge in counts two through four for a jury to merely find that the videos charged were authentic.

> Edington received the instruction that he requested at trial. On appeal, he fails to explain exactly why he thinks that the jury instructions nevertheless were deficient on this point. Edington fails to develop this argument, and, therefore, we find that he has waived it. *See El–Moussa v. Holder,* 569 F.3d 250, 257 (6th Cir.2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and alteration omitted).

*United States v. Edington*, 526 Fed.Appx. at 590.  In the case presently before this Court, Petitioner does not indicate, and the record does not reflect, how Petitioner's appellate counsel should have presented or argued this challenge so as to have raised a potentially meritorious issue for appeal.  Indeed, Petitioner does not identify any potentially meritorious issues for appeal that his attorney should have raised on appeal, but did not.

> Notably, appellate "counsel has no obligation to raise every possible claim and the decision of which among the possible claims to pursue [on appeal] is ordinarily entrusted to counsel's professional judgment," and "[c]ounsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (citations omitted). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).

*Sullivan v. United States*, 587 Fed.Appx. 935, 942 (6th Cir. 2014).

The Sixth Circuit refused to entertain certain claims raised on Petitioner's behalf, finding that Petitioner had waived the issues by failing to raise them in the District Court.  Specifically, the Sixth Circuit did not address Petitioner's claims "that the statutes under which he was convicted are unconstitutional because Congress lacks the power to regulate the internet as a means or facility of interstate commerce under the Commerce Clause . . . [and] that Section 2252(a)(2), which prohibits the knowing receipt of 'any visual depiction' of minors engaged in sexually explicit conduct, is ambiguous as to the appropriate unit of prosecution."  *Id*. at 593. However, in moving for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure at the close of the government's case,[2] defense counsel argued that the government had failed to establish the Court's jurisdiction in light of an allegedly insufficient connection to interstate commerce by virtue of Petitioner's use of the internet and a cellular telephone. *Transcript,* Vol. II (ECF No. 126, PageID# 1308-1312.)

The United States Court of Appeals for the Sixth Circuit has rejected the argument that 18 U.S.C. § 2252 is facially unconstitutional.  *United States v. Halter*, 259 Fed.Appx. 738, 742 (6th Cir. 2008)(holding that the statute does not violate the First Amendment and is not unconstitutionally vague or overbroad)(citing *United States v. Corp*., 236 F.3d 325, 332 (6th Cir. 2001)).  Federal courts have also rejected the argument that the use of the internet and cellular telephones are insufficient to establish a connection to or use of interstate commerce so as to vitiate a federal court's jurisdiction.  "In 2009, it is beyond debate that the Internet and email are

---

[2] Rule 29 of the Federal Rules of Criminal Procedure provides in relevant part:

(a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

facilities or means of interstate commerce." *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009).

> This court considers as-applied challenges to federal child pornography statutes with the federal jurisdiction test employed by the Supreme Court in *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). *See, e.g., United States v. Gann*, 160 Fed.Appx. 466, 473 (6th Cir. 2005); *United States v. Chambers*, 441 F.3d 438, 454–55 (6th Cir. 2006). In *Raich,* the Supreme Court upheld the federal government's regulation of homegrown medicinal marijuana not intended for distribution. *Raich,* 545 U.S. 1, 125 S.Ct. 2195. The Court reasoned that precedent "firmly establishe[d] Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17, 125 S.Ct. 2195. It found production, distribution, and consumption of commodities to be quintessentially economic activities. *Id.* at 25– 26, 125 S.Ct. 2195. It further remarked that the *de minimis* character of individual instances of economic activities was inconsequential, so long as Congress had a rational basis for viewing the economic activity, taken in the aggregate, as substantially affecting interstate commerce. *Id.* at 17, 22, 125 S.Ct. 2195.

> This court has noted that, like with federal marijuana statutes, the federal child pornography statutes are constitutional as applied when they are a part of a comprehensive regulation designed to govern the interstate market of a fungible commodity and Congress rationally believed that the commodity could feed a national market and stimulate demand. *Gann*, 160 Fed.Appx. at 473 (finding § 2251(a) to be constitutional as applied). Accordingly, "[w]hether this general regulation of child pornography encompasses some purely intrastate activity is of 'no moment.'" *Id.* (quoting *Raich*, 545 U.S. at 22, 125 S.Ct. 2195). As a result, [defendant's] as-applied challenge fails because his consumption of child pornography alone is enough to establish federal jurisdiction, regardless of the contended intrastate character of his activities.

*United States v. Powers,* 364 Fed.Appx. 979, 981-82 (6th Cir. 2010).  Additionally,

> [c]ourts have held that the use of materials manufactured outside of the United States is sufficient to establish an interstate nexus. *See, e.g., United States v. Grzybowicz*, 747 F.3d 1296, 1306–07 (11th Cir. 2014) (finding sufficient evidence of the interstate commerce

element of production and possession of child pornography offenses where defendant's cellphone and laptop, which both contained pornographic images of children, were both manufactured outside the United States; the defendant took the pornographic images of the victim on his foreign-made cellphone; the defendant used the Internet to send the photographs to his email account; and the defendant downloaded at least two of the photographs onto his foreign-made computer); *United States v. Strausbaugh*, 534 Fed.Appx. 178, 184 (3d Cir.2013), *cert. denied*, ––– U.S. –––, 135 S.Ct. 99, 190 L.Ed.2d 81 (2014) (finding sufficient evidence supported defendant's conviction for possession of child pornography where the camera the defendant used to take photographs was manufactured in Korea); *United States v. Koch*, 625 F.3d 470, 479 (8th Cir. 2010) (finding government had established that child pornography possessed by defendant on his computer and flash drive had been transported in interstate commerce or produced using such materials by showing that defendant's computer and flash drive had been manufactured in China).

. . . The relevant inquiry is whether there is enough circumstantial evidence that the[] electronic communications were transmitted through interstate wires. Given the omnipresent nature of the Internet, this is not a difficult burden for the government to satisfy. *See United States v. Mellies*, 329 Fed.Appx. 592, 605–07 (6th Cir. 2009); *see also United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) ("[W]e conclude that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce."); *United States v. Hilton*, 257 F.3d 50, 54–55 (1st Cir. 2001) ("[P]roof of transmission of pornography over the Internet . . . satisfies the interstate commerce element of the offense," which the government satisfied through testimony from a computer forensics agent that images had "likely" been downloaded from the Internet because the storage disk "contained software used in conjunction with Internet chat rooms."); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (joining the First Circuit in holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce") (alteration in original) (internal quotation marks omitted); *United States v. Harris*, 548 Fed.Appx. 679, 682 (2d Cir. 2013) (same); *United States v. White,* 2 Fed.Appx. 295, 298 (4th Cir. 2001) (*per curiam*) (same).

*United States v. Napier*, 787 F.3d 333, 346-47 (6th Cir. 2015).  Therefore, Petitioner has failed to establish the denial of the effective assistance of counsel based on his attorneys' failure to preserve or raise this issue on appeal.

In short, claim one, *i.e.,* that Petitioner was denied the effective assistance of trial and appellate counsel, and claim two, *i.e.,* that the Court lacked jurisdiction in this case, provide no basis for relief.

### Insufficiency of the Evidence

In claim three, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions under 18 U.S.C. § 2252; Petitioner specifically alleges that there was insufficient evidence of the use of actual minors and that he was unconstitutionally convicted of possessing images that only appeared to be child pornography. The United States Court of Appeals for the Sixth Circuit has already rejected this argument:

> Edington's argument that the government failed to prove that the videos depict actual minors goes to the sufficiency of the evidence supporting his convictions, not to the admissibility of the videos. *Salcido*, 506 F.3d at 733; *see also United States v. Nolan*, 818 F.2d 1015, 1017 (1st Cir.1987) ( "Whether the pictures were the kind of visual depictions the law forbids, *i.e.,* ones involving the 'use' of actual minors engaging in sexually explicit conduct, 18 U.S.C. § 2252(a)(2)(A), goes more properly to whether the government presented sufficient evidence to prove all the elements of its case than to 'authentication.' "), *overruled on other grounds by United States v. Hilton,* 363 F.3d 58 (1st Cir. 2004); *Berringer*, 601 F.Supp.2d at 979 ("The Government's ultimate ability to establish that the images depict actual children is not an issue of evidence authentication, but one going directly to the Government's burden of proof.").

> In child pornography prosecutions, the government must show that the videos and images at issue depict actual children. *See United States v. Farrelly*, 389 F.3d 649, 653 (6th Cir. 2004) (reasoning that this is a fair inference based on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), which struck down provisions of the Child Pornography

Prevention Act of 1996 as overbroad because they targeted sexually explicit images that appeared to depict minors but were not produced using real children), *superseded by statute on other grounds as recognized in United States v. Williams*, 411 F.3d 675, 677 n. 1 (6th Cir. 2005). "The question of whether the images are virtual or real is one of fact, to be determined by evidence about which argument can be made to the jury." *Id*. at 654. In *Farrelly*, we held that the government met its burden because the jury had access to the photographs, the defense never challenged the reality of the children, and the jury was clearly instructed that it had to find that the images were of real children. *Id*. at 653.

In this case, as in *Farrelly*, the videos in question were presented to the jury, which had the opportunity to assess whether real children appeared in the videos. Edington did not contest at trial that real children appeared in the videos. Therefore, the government presented sufficient evidence to support Edington's convictions on Counts Two through Five. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 (explaining that when a defendant makes a sufficiency of the evidence challenge, the district court's decision must be affirmed if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Moreover, here as in *Farrelly,* the jury was aware of its obligation to find that the videos depicted real children because the jury instructions were explicit on that point—a point emphasized in *Farrelly* although it relates more to the absence of a possibility of juror confusion than to the sufficiency of the evidence.

*United States v. Edington*, 526 Fed.Appx. at 592-93. This Court will not reconsider this claim.

"It is well-settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Woods v. United States*, 104 F.3d 361, unpublished, 1996 WL 733–17 (6th Cir. 1996)(citing *United States v. Prichard*, 875 F.2d 789, 790–91 (10th Cir.1989) (*per curiam*); *Stephan v. United States*, 496 F.2d 527, 528–29 (6th Cir. 1974)(*per curiam*). *See also Kelly v. United States*, 977 F.2d 581, unpublished, 1992 WL 296864, at *2 (6th Cir. 1992)("A federal prisoner may not relitigate in a § 2255 motion to vacate sentence claims that were raised and considered on direct appeal.")(citing *United States v. Jones*, 918 F.2d 9, 10 (2nd Cir. 1990);

*Barton v. United States*, 791 F.2d 265, 267 (2nd Cir. 1986)).  Further, claims of insufficiency of the evidence are not cognizable in § 2255 proceedings.  *Ajan v. United States* Nos. 2:02-CR-71, 2:06-CV-24, 2009 WL 1421183, at *12 (E.D. Tenn. May 20, 2009)(citing *Scott v. Morrison*, 58 Fed.Appx. 602 (6th Cir. 2002)).

### Unconstitutional Application

In claim four, Petitioner argues that, even if he engaged in conducted prohibited by 18 U.S.C. § 2252, he should not be criminally punished because he did not engage in commercial activity and his conduct involved the exercise of free speech. Because Petitioner failed to raise this claim on direct appeal, he must establish good cause for his failure to previously raise this issue and "actual prejudice" resulting from the claimed error.  *See Napier v. United States*, 159 F.3d at 961 (citing *United States v. Frady*, 456 U.S. at 167-68).  Petitioner has failed to do so.

In asserting this claim, Petitioner invokes the Supreme Court's decision in *Bartnicki v. Vopper*, 532 U.S. 514 (2001).  *Motion to Vacate* (ECF No. 132, PageID# 1562-64.)  *Bartnicki* held that a statute criminalizing the illegal interception of information, 18 U.S.C. § 2511(1)(c), cannot be constitutionally applied to a third party who lawfully receives the intercepted information and discloses it to the media.  *Id.* at 535. *Bartnicki* has no application to the facts presented in this case.  Moreover, as noted *supra*, the United States Court of Appeals for the Sixth Circuit has already rejected the proposition that 18 U.S.C. § 2522 violates the First Amendment.  *United States v. Halter*, 259 Fed.Appx. at 739-40.  Furthermore, the United States Supreme Court has held "that a statute which proscribes the distribution of all child pornography, even material that does not qualify as obscenity, does not on its face violate the First Amendment" and "the government may criminalize the possession of child pornography[.]" *United States v. Williams*, 553 U.S. 285, 288 (2008)(upholding the constitutionality of 18 U.S.C.

§ 2252(A)(a)(3)(B))(citing *New York v. Ferber*, 458 U.S. 747, 751-53, 756-764 (1982)).[3]

*Williams* also rejected the argument that the statute's application to non-commercial speech was constitutionally prohibited: "Offers to engage in illegal transactions are categorically excluded from First Amendment protection."  *Id.* at 297 (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388 (1973); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)).

> [O]ffers to give or receive what it is unlawful to possess have no social value and thus, like obscenity, enjoy no First Amendment protection, *see Pittsburgh Press, supra*, at 387–389, 93 S.Ct. 2553.2 Many long established criminal proscriptions - such as laws against conspiracy, incitement, and solicitation - criminalize speech (commercial or not) that is intended to induce or commence illegal activities. *See, e.g.,* ALI, Model Penal Code § 5.02(1) (1985) (solicitation to commit a crime); § 5.03(1)(a) (conspiracy to commit a crime). Offers to provide or requests to obtain unlawful material, whether as part of a commercial exchange or not, are similarly undeserving of First Amendment protection. It would be an odd constitutional principle that permitted the government to prohibit offers to sell illegal drugs, but not offers to give them away for free.

---

[3]  The Supreme Court in *Williams* noted:

> Generally speaking, § 2252A(a)(3)(B) prohibits offers to provide and requests to obtain child pornography. The statute does not require the actual existence of child pornography. . . . Rather than targeting the underlying material, this statute bans the collateral speech that introduces such material into the child-pornography distribution network. Thus, an Internet user who solicits child pornography from an undercover agent violates the statute, even if the officer possesses no child pornography. Likewise, a person who advertises virtual child pornography as depicting actual children also falls within the reach of the statute.

*Id*. at 293.

> To be clear, our conclusion that all the words in this list relate to transactions is not to say that they relate to commercial transactions. One could certainly "distribute" child pornography without expecting payment in return. Indeed, in much Internet file sharing of child pornography each participant makes his files available for free to other participants - as Williams did in this case. "Distribution may involve sophisticated pedophile rings or organized crime groups that operate for profit, but in many cases, is carried out by individual amateurs who seek no financial reward." Child Pornography on the Internet 9. To run afoul of the statute, the speech need only accompany or seek to induce the transfer of child pornography from one person to another.

*Id*. at 295.

*Id*. at 298.

In short, Petitioner's claim four must fail.

### Prosecutorial Misconduct

In claim five, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. Petitioner claims that the prosecutor deliberately and repeatedly misrepresented the evidence and mislead the jury in arguing that, by titling his ad on Craig's List as "YOUNG Boys?," Petitioner was looking for underage boys when in fact Petitioner sought persons between 18 and 20 years of age. Petitioner also complains that the government improperly edited his internet conversations and the tape recording of his interview with police and mocked Petitioner's argument that the video files of child pornography might not depict actual children. Finally, Petitioner alleges that the government solicited perjured testimony when an officer testified that he had performed a scan of all of Petitioner's computer activities while Petitioner was conversing with the officer. *Motion to Vacate* (ECF No. 132, PageID# 1565-67).

Again, Petitioner failed to raise this claim in his direct appeal. Therefore, Petitioner must establish cause and "actual prejudice" resulting from the claimed error. *See Napier v. United States*, 159 F.3d at 961 (citing *United States v. Frady*, 456 U.S. at 167-68). Even assuming that Petitioner would claim the ineffective assistance of appellate counsel as cause for his procedural default, *see Edwards v. Carpenter,* 529 U.S. 446, 451 (2000), the record does not support the substance of Petitioner's claim of prosecutorial misconduct. Petitioner has therefore failed to establish cause and prejudice for his procedural default.

In *Brady v. Maryland*, 373 U.S. 83, 86 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the

good faith or bad faith of the prosecution."   However, the government's failure to disclose potentially exculpatory evidence does not violate *Brady* where the defendant knew or should have known the essential facts that would permit him to take advantage of such information or where the evidence is available from another source. *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). Additionally, a prosecutor is constitutionally prohibited from using false testimony to obtain a conviction:

> The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104. There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false.  *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony.  *Byrd v. Collins,* 209 F.3d [486,] 517–518 [6th Cir. 2000]. A habeas petitioner has the burden of establishing a *Giglio* violation.  *See Foster v. Ward*, 182 F.3d 1177, 1191 (10th Cir. 1999).

*Malcum v. Burt,* 276 F.Supp.2d 664, 684 (E.D. Michigan July 30, 2003).

The record does not indicate that the prosecutor misrepresented evidence or improperly mislead the jury.  Dan Johnson, the officer who posed as a 14 year old male by the name of Jake, testified that in June 2010 he saw an ad in Craig's List entitled "YOUNG boys?".  *Transcript, Vol. I* (ECF No. 125, PageID# 1111-12, 1118.)  The prosecutor showed a copy of the ad to the jury, and the ad was admitted into evidence in its entirety.  *Id.* (PageID# 1114, 1117.)  The text

of the ad indicated that an individual wanted to meet "young persons to mess around with." *Id.* (PageID# 1113.) On cross-examination, Johnson acknowledged that the ad "had an age of 19 listed next to it" and that the ad itself was located in a section of the Internet for adults only. *Transcript, Vol. II* (PageID# 1252-53.)[4] Johnson responded to the ad by indicating that he was a 14 year old male. *Id*. (PageID# 1254); *Transcript, Vol. I* (PageID# 1119.) The next day, Johnson received a Yahoo instant message from Petitioner, who was using the screen name Leonard Vogel. *Id.* (PageID# 1121.) Johnson testified regarding the on-line chats between himself and Petitioner, and the chats were shown to the jury and admitted into evidence. *Id.* (PageID# 1123-1151.) The record simply fails to support Petitioner's allegation that the prosecution submitted an incomplete or an edited version of the chat conversations between Petitioner and Johnson.

Portions of Petitioner's recorded interview with police were also admitted into evidence and played for the jury. *Id*. (PageID# 1158-70; 1173-1184.) The complete recording of Petitioner's interview, however, had been made available to defense counsel.[5] *See Transcript, Vol. II* (PageID# 1268.) Petitioner does not refer to any portion of his interview with police, or of his chats with Johnson, that were not known to Petitioner or which would have provided evidence favorable to the defense.[6]

---

[4] Petitioner also testified regarding content of his ad, indicating that he used the age 19, and the term "boy" because it was a common homosexual term used to describe an adult male between the ages of 18 and 25. (*Transcript, Vol. II*, ECF No. 126, PageID# 1328.) Petitioner stated that he was looking for people between 18 and 22, and he denied seeking underage individuals. *Id*. (PageID# 1328-29.)

[5] On cross-examination, Petitioner denied making certain statements to Johnson.

> Q. And that's what you said, isn't it?
>
> A. That isn't what I said to him on that day, no. That was not depicted. As I said, things have been cut out of the interview. Maybe something was overlapped.

*Transcript, Vol. II* (ECF No. 126, PageID# 1376.)

[6] During his cross examination of Johnson, defense counsel brought out that the government did not show the entirety of Petitioner's interview with police. *Transcript, Vol. II* (PageID# 1268.) Petitioner testified that he told Johnson, in portions of his interview that were not shown to the jury, that his motivation in meeting the 14 year old was concern for the child's safety. *Id*. (ECF No. 126, PageID# 1334-35.)

Johnson also testified on direct examination that he had conducted a very basic forensic examination of Petitioner's laptop and desk computer. *Transcript, Vol. I* (PageID# 1198-1201, 1208.) He found approximately 40 videos of child pornography on the laptop and 15 such videos on the desktop. *Id*. (PageID# 1206, 1209.) Johnson downloaded the content of these videos onto a disc, and seven of the videos, which related to the charges in the case, were admitted into evidence and played for the jury in their entirety. *Id*. (PageID# 1216-22); *Transcript, Vol. II* (ECF No. 126, PageID# 1242-44.) Johnson also testified, on cross-examination, that Petitioner wrote a letter to the "mother" of the child with whom he had been communicating, stating that he was concerned about the child and wanted to prevent the child from engaging in risky online behavior. *Id.* (PageID# 1258.)

Petitioner testified that he had not previously viewed the video clips taken from his computer and shown to the jury; he was repulsed by them. *Transcript, Vol. II* (PageID# 1350-52.) He denied searching the internet for child pornography. *Id*.[7] He insisted that his intention in meeting the 14-year old "child" was to "get them the help that they needed to prevent something bad from happening to them[.]" *Id.* (PageID# 1352.) In fact, Petitioner testified, even while he was chatting with the "child," he

> was looking up on my computer the teen help hotlines and gay hotlines and the sheriff's department to report possible criminal activity or suspect behavior to people that might be in jeopardy of hurting themselves during the time that I was having this chat with this person online. I was what we call multi tasking, doing two things at once, on the [laptop] computer. Those were open, and I was viewing them at the same time.

---

[7]   Petitioner stated: "I told him that, what I told the jury and all of you earlier, that at age 13 I had looked at some type of that material."

> Q. Did you ever open and view any of the seven videos that were shown to the jury?
> A. No, I did not.
> Q. And were you aware that they were on your computer?
> A. No, I was not aware.

*Transcript, Vol. II* (PageID# 1352.)

*Id.* (PageID# 1352-53.) He told Johnson that he had not downloaded child pornography since he was between 13 and 16 years of age. *Id.* (PageID# 1373.)[8]

The government re-called Johnson to testify in rebuttal. Johnson testified, *inter alia*, that his forensic search of Petitioner's computers revealed no indication that, on the date of Petitioner's online chat with Johnson, Petitioner had searched for teen help, or hotline sites, or the sheriff's department website. *Id.* (PageID# 1380-85.) Rather, it appeared that Petitioner was googling his and the "child's" planned meet location, and was looking at pornography and Craig's List. *Id.* (PageID# 1385.)[9]

Nothing in the record supports Petitioner's allegation that Johnson testified falsely. Further, Johnson was subject to cross examination on the issue, at which time he acknowledged that he had testified that he had only conducted a "minimal review of the computer" and had not previously mentioned searching the Internet history. *Id.* He acknowledged that the report prepared by him had made no mention of any analysis of Petitioner's internet history. *Id.* These facts, however, do not establish that Johnson lied in his testimony, nor do they support a claim of prosecutorial misconduct. Mere "inconsistencies in testimony, uncorroborated by factual evidence" are insufficient to substantiate an allegation that the prosecution used perjured testimony. *Ford v. United States,* 36 F.3d 1097, unpublished, 1994 WL 521119, at *3 (6th Cir. Sept.24, 1994).

This Court is unable to locate in the record any improper statements by the prosecutor. Further, the record does not indicate that the prosecutor improperly withheld exculpatory evidence from the defense. The videotape of Petitioner's interview with police and his online

---

[8] Petitioner denied telling Johnson that he accepted full responsibility for the child pornography on his computers. Petitioner said that he had downloaded the saved files six or seven years ago. *Transcript, Vol. II* (ECF No. 126, PageID# 1373-74.)
[9] The Court overruled defense counsel's objection to this testimony. *Transcript, Vol. II* (PageID# 1381-84.)

chats were admitted into evidence, were played for the jury and were made available to the defense. Moreover, the jury was made aware that the entire video of Petitioner's interview with police had not been admitted into evidence. Johnson was subject to full cross-examination, including in connection with his failure to indicate, prior to being re-called in rebuttal, that he had conducted an analysis of the internet history on Petitioner's laptop computer. Defense counsel argued to the jury that Petitioner's ad for young boys indicated that he was looking for someone who was 19 years old, and that he had used the phrase "young boys" only because he had been repeatedly contacted by people who were 30 and 40 years old. *Transcript, Vol. III* (ECF No. 127, PageID# 1445.) Defense counsel also pointed out to the jury that Petitioner had expressed concern for the safety of the "child." *Id.* (PageID# 1447.) The government, he argued, had purposely edited the recording of Petitioner's interview with police in order to establish the appearance of guilt.[10] *Id.* (PageID# 1455-57.)

In finding Petitioner guilty, the jury rejected these arguments.

---

[10] Defense counsel argued, for example:

> The complete interview. I think all of you saw exactly what we saw. The government played little snippets of a complete interview, and several times in those clips you could hear a question by Corporal Johnson being cut off, and then my client's answer.

> And we've all had this experience: Well, did you in fact say X, Y and Z?

> Well, yeah, I did, but it's out of context.

> And context means everything, and we have all had scenarios where we have had to explain with people, I know you are upset with me, but let me give you the context by which I said what I did say.

> And then the context makes the individual go, okay. I didn't realize that was the scenario that you were in.

> Well, the government specifically excised that context to give you one picture of my client's statement to Corporal Johnson. They also cut off his answers. So when you cut off questions in that kind of an interview, you get things like my client saying, yes, I have been downloading, you know, as recently as three days ago.

*Transcript, Vol. III* (PageID# 1454-55.)

During closing argument, the prosecutor stated:

> The defense appears to be arguing. . . that the government can't prove that these are videos of child pornography because you, as the finders of fact, can't be sure that these are real children depicted in the videos.
>
> Judge Sargus will instruct you in a few minutes that is a question of fact that is for your determination.  This isn't a question of science.  When you came into this courthouse on Tuesday, you had with you then the things that you need now to make this determination.
>
> . . . You had your life experience, and you had your eyes.  And what I mean when I say life experience?  Some of you have children.  Some of you have grandchildren, nieces and nephews. I'm pretty sure that most of you were children at some point.  You see children.  You know how they look.  You know how they move, how they act.  You can recognize a child when you see one because you've probably had to do it almost every day of your life. Whether or not that child is on videotape or walking down the street, you know a child when you see one.  And you also had your eyes with you when you came in here Tuesday, and that's all you need when you looked at those videos.

*Id.* (PageID# 1439-40; *see also* PageID# 1460-61.)  However, Petitioner does not refer to, and this Court is unable to locate in the record, any indication that the prosecutor improperly or unfairly referred to the evidence in the case or made improper remarks in closing argument. "The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009)(citing *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008); *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).  A prosecutor may permissibly seek to draw inferences from evidence admitted at trial.  *See id.*  (citing *Byrd*, 209 F.3d at 535).

In short, Petitioner's claim of prosecutorial misconduct, claim five, lacks merit and has been waived for review in these proceedings.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

    *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
May 19, 2016